**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Segari Marino, | No. CV-20-08257-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Joseph Segari Marino challenges the Social Security Administration's ("SSA") determination that he is not disabled and does not quality for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (Doc. 15 at 10–33.) Marino filed a Complaint with this Court seeking judicial review of that determination. (Doc. 1.) The Court has reviewed the briefs and the Administrative Record (Doc. 15, "AR") and now affirms the administrative law judge's ("ALJ") decision (AR at 10–33).

I.     **BACKGROUND**

On March 26, 2017, Marino filed his application for SSI, alleging that he had been disabled since December 9, 2015. (AR at 82–83.) The Commissioner denied Marino's application initially and on reconsideration. (AR at 94–95, 111–112.) Marino appeared at a hearing on December 10, 2019 before an ALJ. (AR at 34–80.) After amending his alleged onset (of disability) date to March 26, 2017, the ALJ considered whether Marino has been disabled since March 26, 2017. (*Id.*) On February 5, 2020, he issued a written decision finding Marino not disabled. (AR at 10–33.) Marino requested review of his

claim and on July 27, 2020, the Appeals Council denied review making the ALJ's decision final and ripe for this Court's review. (AR at 1–6.) Marino now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

After reviewing and considering the medical opinions and records, the ALJ evaluated Marino's disability based on the following severe impairments: cervical degenerative disc disease status post injury and surgery, lumbar degenerative disc disease with spondylosis, chronic pain syndrome, and obesity. (AR at 16–17.) In making this determination, the ALJ reviewed the entire record, including medical records and opinions and statements from Marino. (AR at 15–27.) The ALJ also evaluated Marino's "cocaine use disorder, alcohol abuse, major depressive disorder, bipolar disorder, unspecified depressive disorder, and unspecified anxiety disorder" and determined that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (AR at 17, *see* AR at 17–19.) When making the mental health determination, the ALJ reviewed the entire record, including medical records and statements from Marino, opinion evidence, and the four "functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (AR at 18.) The ALJ found that "[Marino] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (AR at 19.)

Next, the ALJ calculated Marino's residual functional capacity ("RFC"). The ALJ determined that Marino had the RFC to perform light work. (AR at 20–26.) When determining Marino's RFC, the ALJ analyzed conflicting medical and opinion evidence. (*Id.*) Nevertheless, the ALJ found that the medical record demonstrates functional abilities and behaviors inconsistent with the duration, frequency, and severity of Marino's alleged limitations. (*Id.*) Based on Marino's RFC, the ALJ determined that he could perform past relevant work as an office helper. (AR at 26.) Accordingly, the ALJ found

1    that Marino was not disabled during the relevant period. (AR at 26–27.)

2    **II.    STANDARD OF REVIEW**

3          In determining whether to reverse an ALJ's decision, the district court reviews

4    only those issues raised by the party challenging the decision. *See Lewis v. Apfel*,

5    236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's

6    disability determination only if it is not supported by substantial evidence or is based on

7    legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

8    more than a scintilla, but less than a preponderance; it is relevant evidence that a

9    reasonable person might accept as adequate to support a conclusion considering the

10   record as a whole. *Id.* To determine whether substantial evidence supports a decision, the

11   Court must consider the record as a whole and may not affirm simply by isolating a

12   "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is

13   susceptible to more than one rational interpretation, one of which supports the ALJ's

14   decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

15   (9th Cir. 2002) (citation omitted). Finally, the Court may not reverse an ALJ's decision

16   on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

17   1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally

18   falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d

19   1104, 1119 n.11 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

20   "An error is harmless if it is inconsequential to the ultimate nondisability determination,

21   or if the agency's path may reasonably be discerned, even if the agency explains its

22   decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090,

23   1099 (9th Cir. 2014) (citations and internal quotation marks omitted).

24          To determine whether a claimant is disabled, the ALJ follows a five-step process.

25   20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps,

26   but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094,

27   1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is

28   presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the

claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.    DISCUSSION

Marino argues that the ALJ failed to properly weigh the medical opinion evidence presented at his hearing and failed to properly determine his RFC. (Doc. 19 at 11–22.) He requests that this Court vacate the ALJ's decision and remand his case "for further proceedings, including a de novo hearing and new decision." (*Id.* at 23.) As addressed below, the Court disagrees.

Although an ALJ must consider all the medical evidence in the record, medical opinion sources are separated into three types: (1) treating physicians (who treat a claimant), (2) examining physicians (who examine but do not treat a claimant), and (3) non-examining physicians (who do not examine or treat a claimant). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (superseded by statute on other grounds). For disability benefit applications filed prior to March 27, 2017, treating medical sources are generally given more weight than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to

give controlling weight to a treating source's opinion, the ALJ must consider several factors—including the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors—in deciding how to weigh the source's opinion. 20 C.F.R. § 404.1527(c). The ALJ must thereafter provide an explanation for the weight given to each medical source. 20 C.F.R. § 404.1527(f)(2). If certain evidence contradicts a treating physician's opinion, the ALJ must provide "specific and legitimate reasons supported by substantial evidence" for rejecting that physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830) (internal citation marks omitted).

Despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

In laymen's terms, RFC is what the claimant can do in a work environment in spite of their disabilities or limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations define RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record," to determine the claimant's

capacity for work. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotation marks and citation omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ should consider a claimant's ability to meet physical and mental demands, sensory requirements, and other functions. *See* 20 C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d). "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (cleaned up). Additionally,

> The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate. In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC.

*Laborin*, 867 F.3d at 1153 (cleaned up).

"At step four, a claimant has the burden to prove that he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). An ALJ is free to consider any activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). It is well established that an ALJ is also empowered to note a claimant's daily activities that "'involv[e] the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

1989)).

Marino argues that the ALJ erred by giving minimal weight to the opinions of Dr. Mark Davis, Dr. Robert J. Goodrich, and Dr. Olivia Yambem. (Doc. 19 at 11.) Specifically, he asserts that the "ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinions" of these three doctors. (*Id.* at 11–12.) In support of this argument, Marino points to the fact that "the ALJ rejected the opinion of every treating physician in the record, despite" the presence of "their supportive treatment notes" as evidence. (*Id.* at 15.) Marino also notes that "the other evidence of record is entirely consistent with" Dr Davis', Dr. Goodrich's, and Dr. Yambem's proscribed limitations for Marino. (*Id.* at 16.) Specifically, he highlights Dr. Chapleau's, Dr. Sosey's, and Dr. Powar's medical opinions of and treatments proscribed for his condition as consistent with Dr Davis', Dr. Goodrich's, and Dr. Yambem's conclusions. (*Id.* at 16–17.) When considering Marino's daily activities, he argues that the ALJ did not properly weigh the qualifications he placed on his ability to volunteer at AA meetings and to help Dr. Goodrich's mother-in-law. (*Id.* at 20–21.) Finally, Marino argues that the ALJ erred when he rejected a "portion of Dr. Yambem's opinion that [Marino] would need to lie down and/or miss work" on the grounds that it was speculative. (*Id.* at 22.) Because the ALJ does not explain why that portion of Dr. Yambem's opinion was speculative and cites no evidence in support of his conclusion, Marino argues it did not meet the required level of specificity to justify rejecting Dr. Yambem's opinion. (*Id.*)

The Commissioner begins by arguing that an ALJ's RFC determination does not need to "mirror any specific opinion, let alone a treating opinion" because an "RFC finding is not a medical finding, but an administrative finding regarding a claimant's ability to perform basic work functions that is expressly reserved to the adjudicator." (Doc. 20 at 5.) And so, the Commissioner asserts, "an ALJ must assess their RFC finding based on the relevant medical evidence, including medical source statements, but does not require an ALJ to match the limitations of any particular medical source." (*Id.*)

The Commissioner next argues that the Administrative Record was not consistent with Dr Davis', Dr. Goodrich's, and Dr. Yambem's opinions. As an example, the Commissioner highlights the medical opinions of Dr. Bargan, Dr. Keer, and Dr. Garrison—all of whom believed that Marino did not have a severe physical impairment. (*Id.* at 7.) The Commissioner argues that the fact that the ALJ made a decision that was more lenient than Dr. Bargan's, Dr. Keer's, and Dr. Garrison's medical opinions but less lenient than Dr Davis', Dr. Goodrich's, and Dr. Yambem's opinions is strong evidence that the ALJ properly weighed all of the evidence when making its RFC determination. (*Id.* at 7.) The Commissioner also notes that the record contains a plethora of evidence that is inconsistent with Dr Davis', Dr. Goodrich's, and Dr. Yambem's proscribed restrictions regarding Marino's limitations caused by headaches and regarding his ability to walk, to lift items, and to move his neck. (*Id.* at 8–10.) Thus, the Commissioner concludes, "[s]ubstantial evidence supports the ALJ's finding that [Marino] [could] perform light work, and as such, this Court should affirm the Commissioner's decision." (*Id.* at 10.)

Marino responds by agreeing that the ALJ's opinion does not need to mirror a specific medical opinion in the Administrative Record. (Doc. 21 at 3.) Marino argues that the reason for his appeal is that the ALJ improperly weighed the evidence in the Administrative Record. (*Id.*) Marino then asserts that the ALJ improperly weighed evidence because "the ALJ failed to explain why the probative evidence of record did not provide adequate support for each of these opinions." (*Id.* at 4.) The ALJ's "shoddy analysis" is why, Marino argues, this case should be remanded. (*Id.*) For example, the ALJ did not properly characterize Marino's volunteering activities, which were one-off activities, and did not show that such activities translated into an ability to work on a regular basis. (*Id.* at 4–5.)

It was reasonable for the ALJ to find that Dr Davis', Dr. Goodrich's, and Dr. Yambem's opinions were not well supported, to not give them controlling weight, and to assign them minimal weight. Given the limited persuasive value of these medical

opinions, the ALJ's RFC determination was reasonable and the ALJ's decision will be affirmed.

### A.     Dr. Davis' Medical Opinion

In an initial statement, Dr. Davis determined that Marino could only lift 10 pounds, and, provided he could change positions every 20-30 minutes, Marino could sit for four hours and stand or walk for four hours in an eight-hour workday. (AR at 1623–26.) In that same report, he also found that Marino had postural and manipulative restrictions. (*Id.*) He determined that right shoulder and cervical pain were the cause for these limitations. (*Id.*) But Dr. Davis' assessment of Marino's physical condition and limitations conflicts with the medical record. The consultative report indicated that Marino entered the exam room and sat down in a chair with no discomfort. (AR at 25, 554.) He also exhibited no difficulty standing, transitioning to and from standing or sitting positions, or engaging in postural movements such as stooping and balancing. (*Id.*) His spine and bilateral upper and lower extremities also showed an intact range of motion, sensation, and muscle strength. (AR at 25, 555–556.) He also demonstrated no manipulative difficulties as he was capable of picking up a small coin, screwing a nut into a bolt, writing his name and other personal information on a chart, and grasping paper between his thumb and index finger with both hands. (*Id.*) Thus, the ALJ reasonably gave "little weight to [Dr. Davis'] opinion because it [was] inconsistent with the medical evidence of record." (AR at 25.)

Dr. Davis performed a second treating source statement to which the ALJ also assigned little weight. (AR at 25, 1676–77.) This time, the ALJ reasonably gave his statement little weight because it was internally inconsistent. (AR at 25.) In it, he indicated that Marino was capable of performing light work but not sedentary work. (AR at 1676–77.) The ALJ also gave this statement little weight because he failed to identify any objective findings upon which he relied when determining that Marino would experience pain when attempting to lift and carry objects and that this pain would interfere with his ability to focus. (*Id.*)

**B.     Dr. Goodrich's Medical Opinion**

Dr. Goodrich provided an opinion where he determined that Marino was unable to work because he struggled to perform daily living activities and was unable to do housework, stand, or sit for more than 10 minutes. (AR at 25, 1617–18, 1627–30.) It was reasonable for the ALJ to give this opinion little weight because his opinion is inconsistent with the medical record. (*See* AR at 25.) His opinion is inconsistent with physical exams that showed no neurological defects. (AR at 424, 554–56, 1469, 1497, 1535, 1679.) It is inconsistent with reports where Marino indicated no difficulties accomplishing his daily living activities. (AR at 553, 560, 1410.) It is also inconsistent with the volunteer work Marino performs. (AR at 25.) Although Marino tried to minimize the energy exerted volunteering, "[ensuring] cookies were available" over "the span of 4 hours" is a task well beyond his abilities according to Dr. Goodrich's medical opinion. (Doc. 21 at 5.) Finally, it is inconsistent with Marino's paid work caring for Dr. Goodrich's disabled son and mother. (AR at 25.) Even if Marino was paid to "just '[sit] there' and '[make] her laugh,'" it conflicts with Dr. Goodrich's restrictive medical opinion. (Doc. 19 at 21.)

**C.     Dr. Yambem's Medical Opinion**

Dr. Yambem completed a medical source statement in which she determined that Marino's headache disorder requires him to lie down at unpredictable intervals and that it may cause him to miss more than three days of work a month. (AR at 26, 1619–22.) With that said, Dr. Yambem still indicated that Marino could work full-time. (*Id.*) It was reasonable for the ALJ to give this opinion partial weight because the record indicates that Marino suffers no exertional limitation due to his headache disorder. He shows no neurological deficits. (AR at 26, 384, 554, 1469, 1535). The ALJ also reasonably rejected Dr. Yambem's opinion that Marino would need to lie down at unpredictable intervals and miss work after observing Dr. Yambem's opinion was not rooted in any objective medical findings. (AR at 26.) Instead of relying on Dr. Yambem's opinion, the ALJ reasonably concluded that "the evidence of record . . . fails to document any emergency

1    room presentations or hospitalizations secondary to acute headache complaints." (*Id.*)

2    Furthermore, the ALJ reasonably pointed out that "Dr. Yambem also acknowledges that

3    Botox treatments are helping to relieve the claimant's headaches" which supported his

4    conclusion that Marino's headaches were nonsevere. (AR at 26; *see* AR at 1678.)

5        **D.    The ALJ's RFC Determination**

6        Given the medical evidence presented, the ALJ reasonably determined that

7    Marino's disability limited him to light work.[*] (AR at 20.) As the ALJ's opinion

8    demonstrates, he properly considered the medical evidence after appropriately weighing

9    the evidence before determining Marino's RFC. (*See* AR at 20–26.) He accomplished this

10   through an extensive discussion of the medical evidence. (*See id.*) For example, he

11   reasonably decided to weigh some treating medical opinions less than others given

12   Marino's daily activities and the objective medical record available. (*See id.*) In

13   particular, he reasonably discounted medical opinions that were not supported by

14   objective medical findings or that were self-contradictory. (*See id.*) Finally, he properly

15   classified Marino's exertion level as an office helper as light. (AR at 26.) Thus, his RFC

16   determination was reasonable and will be affirmed.

17   \ \ \

18   \ \ \

19   \ \ \

20   \ \ \

21   \ \ \

22   \ \ \

23   \ \ \

24

---

25   [*] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or
     carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very
26   little, a job is in this category when it requires a good deal of walking or standing, or
     when it involves sitting most of the time with some pushing and pulling of arm or leg
27   controls. To be considered capable of performing a full or wide range of light work, you
     must have the ability to do substantially all of these activities. If someone can do light
28   work, we determine that he or she can also do sedentary work, unless there are additional
     limiting factors such as loss of fine dexterity or inability to sit for long periods of time."
     20 C.F.R. § 404.1567(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the February 5, 2020 ALJ decision (AR at 10–33).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 10th day of December, 2021.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge